## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| **HEALTH DIAGNOSTIC LABORATORY, INC.,** *et al.*, | **Case No. 15-32919 (KRH)** |
|  | **(Jointly Administered)** |
| Debtors.[1] |  |
| **HEALTH DIAGNOSTIC LABORATORY, INC.,** | **Adv. Pro. No. 16-03011 (KRH)** |
| Plaintiff, |  |
| v. |  |
| **TRUE HEALTH DIAGNOSTICS, LLC, and JEFFREY P. "BOOMER" CORNWELL,** |  |
| Defendants. |  |

### REPLY OF PLAINTIFF IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER EXPEDITING CONSIDERATION OF, AND SHORTENING THE NOTICE PERIOD

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Health Diagnostic Laboratory, Inc. (0119), Central Medical Laboratory, LLC (2728) and Integrated Health Leaders, LLC (2434).

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
Henry P. (Toby) Long, III (VSB No. 75134)
Shannon E. Daily (VSB No. 79334)

*Counsel to the Debtors*
*and Debtors in Possession*

**APPLICABLE TO, MOTION FOR A TEMPORARY RESTRAINING ORDER,
PRELIMINARY INJUNCTION, AND ORDER TO SHOW CAUSE FOR WILLFUL
VIOLATIONS OF THE AUTOMATIC STAY, AND MEMORANDUM IN SUPPORT**

Plaintiff Health Diagnostic Laboratory, Inc. ("HDL"), by its undersigned counsel, files

this reply (the "Reply") in support of the *Motion of Plaintiff for Entry of an Order Expediting*

*Consideration of, and Shortening the Notice Period Applicable to, Motion for a Temporary*

*Restraining Order, Preliminary Injunction, and Order to Show Cause for Willful Violations of*

*the Automatic Stay, and Memorandum in Support* [Adv. Doc. No. 4] (the "Motion to

Expedite"),[2] and in response to *Defendants' Response in Opposition to Motion of Plaintiff for*

*Entry of an Order Expediting Consideration of, and Shortening the Notice Period Applicable to,*

*Motion for a Temporary Restraining Order, Preliminary Injunction, and Order to Show Cause*

*for Willful Violations of the Automatic Stay, and Memorandum in Support* [Adv. Doc. No. 6] (the

"Response").  In support of this Reply, HDL submits as follows:

## I.      Preliminary Statement

1.      HDL submits this Reply to respond to the numerous misstatements contained in

the Response.  Contrary to the statements contained in the Response, (i) there is no legitimate

contractual dispute concerning the APA or the Excluded Receivables, HDL owns the Excluded

Receivables; (ii) HDL attempted in good faith to resolve this issue, but was forced to initiate this

adversary proceeding as a result of the Defendants' outrageous violations of the automatic stay,

tortious interference, and breaches of contract; (iii) HDL is facing irreparable harm as a result of

the Defendants concerted efforts to prevent the collection of the Excluded Receivables; (iv) True

Health indicated in its own Cease and Desist Letters that it would not provide HDL with

---

[2]      Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the
Motion to Expedite or the TRO Motion (as defined in the Motion to Expedite).

appropriate access to information; and (v) HDL is acting appropriately in proceeding to collect the Excluded Receivables.

2.      Importantly, the Response fails to dispute that the Defendants have engaged in a coordinated effort to prevent the collection of the Excluded Receivables, which are property of HDL's bankruptcy estate.

## II.     Background

### A.     Discussions Between the Parties

3.      The Response fails to identify numerous relevant facts about the discussions between the parties prior to the commencement of this adversary proceeding.

4.      First, although the Response attached the Cease and Desist Letters, which also were Exhibit E and Exhibit F to the Complaint, the Response does not include the response letter to the Cease and Desist Letters from HDL (the "HDL Letter"), dated January 6, 2016.  The HDL Letter was sent the day after HDL received the Cease and Desist Letters.  The Declaration of Richard Arrowsmith (the "Declaration") is attached hereto as Exhibit A, and the Declaration is incorporated herein as if set forth in full.  A true and correct copy of the HDL Letter is attached to the Declaration as Exhibit 1.

5.      Through the HDL Letter, HDL attempted to resolve this matter without involving the Court.  Specifically, HDL demanded that True Health withdraw the Cease and Desist Letters and confirm that True Health would comply with its obligations under the APA.  True Health has neither withdrawn the Cease and Desist Letters nor confirmed that True Health would comply with its obligations under the APA.

6.      HDL also indicated in the HDL Letter that, although the ARM Agreement requires ARM to comply with all applicable laws, HDL would demand in writing that ARM

3

comply with all applicable laws.  A true and correct copy of the letter HDL sent to ARM on January 6, 2016 (the "HDL/ARM Letter"), is attached as to the Declaration as Exhibit 2.

7.     Second, the Response fails to discuss the conclusion of the negotiations concerning True Health's offer to purchase certain of the Excluded Receivables.  As indicated in the Response, after HDL sent the HDL Letter, and following discussions between the parties, True Health offered $1.25 million to purchase certain of the Excluded Receivables.  The Response fails to identify, however, that on or about January 20th and 21st, HDL's CRO, Richard Arrowsmith, discussed True Health's offer with more than one member of True Health's management and informed them that the offer was unacceptable because it was much too low. In fact, HDL's CRO informed True Health's management that the offer was insufficient by a factor of ten.  Thus, there was no need for counsel to HDL to respond to counsel to True Health regarding True Health's offer, which HDL's CRO rejected.

8.     Third, the Response fails to address True Health's bad faith negotiations.  As indicated in the email from counsel to HDL sent on January 11, 2016, which is part of Exhibit B to the Response (the "January 11th Email"), the Excluded Receivables ARM was collecting as of January 11, 2016, consisted of (i) a batch of Excluded Receivables sent to ARM on or about August 10, 2015, which consists of approximately 5,300 accounts with a total amount owed of approximately $13.7 million; and (ii) a batch of Excluded Receivables sent to ARM after the HDL Sale, which consists of approximately 3,476 accounts with a total amount owed of approximately $11.8 million.

9.     The Debtors believe that the first batch of Excluded Receivables may contain many Excluded Receivables for which insurers made payments directly to patients rather than reimbursing HDL for such claims.

4

10.     The second batch consists of accounts for patients who are identified as insured by and/or as provided claims services by Blue Cross and Blue Shield entities ("BCBS Entities"). HDL and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") have filed the BCBS 2004 Motions [3] in the bankruptcy proceeding seeking Fed. R. Bankr. P. 2004 examinations of certain BCBS Entities because the Debtors believe that such BCBS Entities may have made payments directly to patients rather than reimbursing HDL for such claims. The Debtors believe that the second batch of Excluded Receivables contains many Excluded Receivables for which BCBS Entities made payments directly to patients rather than reimbursing HDL for such claims.

11.     The third batch of Excluded Receivables mentioned in the January 11th Email was sent to ARM after the HDL Sale, and consists of approximately 430 accounts with a total amount owed of approximately $1.4 million. As mentioned in the January 11th Email, HDL had instructed ARM to cease collection activities concerning the third batch as of January 11, 2016. As of February 1, 2016, HDL has instructed ARM to commence collection activities concerning the third batch.

12.     As indicated in the January 11th Email, HDL has asked ARM to place collection of accounts on hold for 30 days if an obligor informed ARM that the obligor did not receive payment concerning such Excluded Receivable. It is HDL's understanding that this 30 day hold period policy remains in effect. It is HDL's understanding that this 30 day hold period policy has been in effect while ARM has attempted to collect the Excluded Receivables.

---

[3]     The BCBS 2004 Motions are (i) the *Motion of the Debtors and Debtors in Possession for Entry of an Order Authorizing the Debtors to Conduct Rule 2004 Examinations of Certain Blue Cross and Blue Shield Entities* [Doc. No. 753]; and (ii) *Supplemental Motion of the Debtors and Debtors in Possession for Entry of an Order Authorizing the Debtors to Conduct Rule 2004 Examinations of Certain Blue Cross and Blue Shield Entities* [Doc. No. 756].

13.     As further indicated in the January 11th Email, as of January 11, 2016, HDL had

asked ARM to take no further action concerning an Excluded Receivable if the obligor proved to

ARM that the obligor was not paid by an insurer.  HDL may ask ARM in the near future to

commence collection activities with respect to such Excluded Receivables.

14.     HDL's understanding based on representations from True Health was that True

Health did not oppose HDL collecting Excluded Receivables from patients who had been paid

directly by their insurer.

15.     Unbeknownst to HDL, however, the Defendants contemporaneously were sending

the TH Doctor Memos, including the January 6 Doctor Memo, and similar correspondence

expressly directing obligors not to provide explanations of benefits ("EOBs") or other

information to ARM.

16.     Among other things, the January 6 Doctor Memo states "[p]lease encourage your

patients NOT to contact their insurance company to obtain an EOB.  It is the responsibility of the

collection agency to prove the debt.  If a patient issues an EOB, the collection agency will use

that to generate an invoice to the patient."  *See* January 6 Doctor Memo at 1; Complaint, ¶ 70.

17.     HDL's CRO received one of the TH Doctor Memos, the January 6 Doctor Memo,

during the evening of January 26, 2016.  Based on the TH Doctor Memos, the January 6 Doctor

Memo, and other information HDL received, HDL realized that True Health had been

negotiating in bad faith and was attempting to prevent HDL from collecting any Excluded

Receivables connected to physicians, physician groups, or related entities that conduct business

with True Health.  In light of these facts, and in the sound exercise of its business judgment, after

consulting with counsel to the Committee, HDL determined that it would not be able to resolve

these issues without involving the Court, and that initiating the adversary proceeding and seeking

6

the relief requested in the Complaint and the TRO Motion at the earliest possible date was in the best interests of its estate and creditors.

**B.** **The Excluded Receivables**

18. There is no legitimate dispute that the Excluded Receivables remained property of HDL's estate following the HDL Sale, and the Defendants have not asserted otherwise. Prior to the Closing Date, HDL offered True Health the opportunity to purchase the Excluded Receivables and disclosed to True Health its intention to pursue collection of the Excluded Receivables. *See* Complaint, ¶ 36. True Health did not accept HDL's offer to purchase the Excluded Receivables. *See* Complaint, ¶ 37. The HDL Sale closed without True Health acquiring any rights in the Excluded Receivables. *See* Complaint, ¶ 38. Prior to the Closing Date, True Health not only was aware of the existence of the Excluded Receivables, but as a potential purchaser True Health had access to information concerning the Excluded Receivables.

19. In addition to the Excluded Receivables in the three batches ARM currently is attempting to collect, the face amount owed for the other Excluded Receivables is well in excess of the amounts in those three batches.

20. The suggestions in the Response that True Health has a legal basis to contest HDL's efforts to collect the Excluded Receivables, or that True Health suffered any legally cognizable damage as a result of HDL's efforts to collect the Excluded Receivables, have no basis in law or fact. A contrary conclusion would lead to the absurd result that True Health can exercise control over the Excluded Receivables even though the Excluded Receivables are property of HDL's estate that True Health did not purchase.

21. True Health is not a party to the agreements that underlie the Excluded Receivables nor is True Health in privity with any party concerning the agreements that underlie

the Excluded Receivables.  As such, True Health has no standing to dispute HDL's actions concerning the collection of the Excluded Receivables, which are property of HDL's estate.

22.     Despite lacking any standing to interject itself in the collection of the Excluded Receivables, True Health asserts in the Response that HDL waived its rights to the Excluded Receivables or otherwise is not entitled to collect the Excluded Receivables.  The Excluded Receivables HDL seeks to collect are based on laboratory testing performed for or on behalf of the related patients.  Such patients and/or their insurers owe HDL the charges for those services as a matter of contract.  Alternatively, if the patients claim they have no contractual obligation to pay HDL for the services, HDL has claims against the patients under fraudulent transfer and/or voluntary conveyance laws.

23.     In accordance with its fiduciary duties to its estate and creditors, HDL intends to pursue collection of the Excluded Receivables based on any and all of HDL's claims related to the Excluded Receivables.

### III.     Reply

24.     In their Response, the Defendants request that the Court deny the relief requested in the Motion to Expedite, or in the alternative, that the Court schedule the TRO Hearing on February 16, 2016, and schedule the Preliminary Injunction Hearing two weeks later.  For the reasons set forth in the Motion to Expedite, the TRO Motion, and herein, HDL requests that the Court grant the Motion to Expedite and hold the TRO Hearing on February 4, 2016, and hold the Preliminary Injunction Hearing on February 16, 2016.

### A.     HDL Faces Irreparable Harm

25.     HDL faces irreparable harm for multiple reasons.  HDL faces irreparable harm absent the entry of the Restraining Order and the Injunction because, upon information and

belief, the Defendants lack the funds necessary to fully compensate HDL for the damages the Defendants are causing to HDL through their concerted efforts to prevent the collection of any Excluded Receivables connected to physicians, physician groups, or related entities that conduct business with True Health. *See Hughes Network Sys. v. Interdigital Communications Corp.*, 17 F.3d 691, 694 (4th Cir. 1994) ("irreparable harm may still exist . . . where damages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected.") (internal citations omitted). True Health offered to pay only $1.25 million for certain of the Excluded Receivables, even though the face amount of the Excluded Receivables is well in excess of $50 million. *See* Declaration, ¶ 19. Neither True Health nor Mr. Cornwell has the financial capability to compensate HDL for the damages their actions have caused and are causing to HDL through their efforts to prevent the collection of the Excluded Receivables. Thus, immediate entry of a Restraining Order is appropriate and necessary to prevent further irreparable harm to HDL.

26.     In addition, HDL faces irreparable harm because monetizing the precise amount of damages caused by the Defendants' actions will be extremely difficult. *Multi-Channel TV Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994) ("[I]rreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate.") (internal citations omitted). The Defendants have contacted numerous physicians, physician groups, and related entities, who, in turn, have communicated with many patients who owe amounts to HDL.

27.     It will be difficult to calculate the precise extent of the damages caused by the Defendants' actions; thus, immediate injunctive relief is necessary to prevent further irreparable injury. *See Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) (holding that injunctive relief is appropriate where money damages are difficult to calculate).

28.     Further, both the effects of the Defendants' wrongful actions, and upon information and belief, Defendants' wrongful actions themselves, are ongoing.

29.     Attached to the Declaration as <u>Exhibit 3</u> is a true and correct copy of the portion of an email exchange HDL's CRO received on February 1, 2016, after the Complaint was filed initiating this adversary proceeding (the "<u>Living Well Email</u>").   In the Living Well Email, a patient forwards an email from a physician group that, based upon information and belief, has been in communication with one or more of the Defendants.

30.     Attached to the Declaration as <u>Exhibit 4</u> is a true and correct copy of a letter HDL's CRO received on February 2, 2016 (the "<u>Tomball Letter</u>").   Based upon information and belief and the language of the Tomball Letter, the Tomball Letter is a letter from a physician group that has been in communication with one or more of the Defendants.   The Tomball Letter, among other things, instructs patients not to provide any information in response to attempts to collect Excluded Receivables.

31.     Attached to the Declaration as <u>Exhibit 5</u> is a true and correct copy of a letter HDL's CRO received on February 2, 2016 (the "<u>First Patient Letter</u>").   Based upon information and belief, the First Patient Letter is from a patient who has been, or whose physician or physician group has been, in communication with one more of the Defendants.

32.     Attached to the Declaration as <u>Exhibit 6</u> is a true and correct copy of a letter HDL's CRO received on February 2, 2016 (the "<u>Ross & Matthews Letter</u>").   Based upon information and belief and the language of the Ross & Matthews Letter, the Ross & Matthews Letter is on behalf of a patient who has been, or whose physician or physician group has been, in communication with one or more of the Defendants.

10

33.    Attached to the Declaration as Exhibit 7 is a true and correct copy of a letter HDL's CRO received on February 2, 2016 (the "Second Patient Letter").    Based upon information and belief and the language of the Second Patient Letter, the Second Patient Letter is from a patient who has been, or whose physician or physician group has been, in communication with one or more of the Defendants.

**B.    The Defendants Are Violating the Automatic Stay**

34.    HDL is entitled to entry of the Restraining Order requiring the Defendants to show cause as to why they should not be held in contempt for their ongoing willful violations of the automatic stay until such time as the Defendants withdraw the Cease and Desist Letters, the TH Doctor Memos and all similar correspondence, and all other damages sustained by HDL are reimbursed by Defendants.

35.    The Defendants' argument concerning the automatic stay fails to fully and accurately describe applicable law or the case the Defendants cite.    Specifically, the Defendants only refer to Bankruptcy Code section 362(a)(1).    *See* Response, at 7 (quoting *Bellini Imports, Ltd. v. Mason & Dixon Lines, Inc.*, 944 F.2d 199, 201 (4th Cir. 1991)).    The Defendants fail to mention Bankruptcy Code section 362(a)(3), which prevents the Defendants from taking any action to exercise control over estate property, or the subsequent language in *Bellini Imports*, which states "[h]owever, the stay is also applicable to 'any act to obtain possession or property of the estate or of property from the estate.'"    *Billini Imports*, 944 F.2d at 201.

36.    As set forth in the Complaint and the TRO Motion, by attempting to interfere with the collection efforts concerning the Excluded Receivables, the Defendants are acting to exercise control over estate property in violation of Bankruptcy Code section 362(a)(3).    As a result, HDL is entitled to the show cause relief requested in the Restraining Order.

C.    **True Health Has Refused to Provide Information**

37.     Despite the statements to the contrary in the Response, True Health has indicated that it will not provide HDL with information concerning the Excluded Receivables.  In each of the Cease and Desist Letters, True Health states that "neither the HDL estate nor ARM has access to legitimate billing and accounts receivable information to correctly calculate the amounts for these collection actions."  Cease and Desist Letters, at 2.  As a result, HDL is entitled to the expedited relief requested in the Restraining Order and the Injunction concerning such information in True Health's possession.

D.    **HDL Made a *Bona Fide* Effort to Resolve the Issues**

38.     As indicated above, HDL sent the HDL Letter the day after receiving the Cease and Desist Letters.  The HDL Letter constituted a *bona fide* effort to resolve these issues without involving the Court.  True Health, however, failed to withdraw the Cease and Desist Letters or to confirm that True Health would comply with its obligations under the APA.

39.     HDL also engaged in discussions with True Health, which discussions, including the offer made by True Health, confirmed that True Health would not have the financial wherewithal to purchase the Excluded Receivables for an appropriate price.

40.     Moreover, based on the TH Doctor Memos, the January 6 Doctor Memo, and other information HDL received, HDL learned that True Health had been negotiating in bad faith and was attempting to prevent HDL from collecting any Excluded Receivables connected to physicians, physician groups, or related entities that conduct business with True Health.  As a result, in the sound exercise of its business judgment, after consulting with counsel to the Committee, HDL determined that it would not be able to resolve these issues without involving the Court, and that initiating the adversary proceeding and seeking the relief requested in the

Complaint and the TRO Motion at the earliest possible date was in the best interests of its estate and creditors.

### E. The Hearing on the Motion to Expedite Is Properly Noticed

41.     Since the filing of the Response, at the request of and to accommodate counsel to the Defendants, the hearing on February 3rd has been moved to February 4th at 11:00 a.m., and HDL has filed the *Amended Notice of Motion and Notice of Hearing* [Adv. Doc. No. 10] (the "Amended Notice").  The Amended Notice correctly notices the February 4th hearing and the February 16th hearing.

### F. The Relief Requested in the Motion to Expedite Is Reasonable

42.     Despite the Defendants' assertions to the contrary, the Complaint, the TRO Motion, and the Motion to Expedite were filed to prevent irreparable harm to HDL's estate resulting from the Defendants' willful violations of the automatic stay, tortious interference, and contractual breaches.  In light of True Health's bad faith negotiations and the Defendants' outrageous scheme to harm HDL's estate by preventing the collection of Excluded Receivables, the relief requested and the schedule proposed in the Motion to Expedite is entirely appropriate.

### V.     Conclusion and Reservation of Rights

43.     In sum, HDL requests that the Court grant the relief requested in the Motion to Expedite including holding the TRO Hearing on February 4, 2016, and holding the Preliminary Injunction Hearing on February 16, 2016.

### VI.     Notice

44.     Notice of this Reply has been provided in accordance with the Case Management Procedures, including to counsel to the Defendants.  The Debtors submit that no other or further notice need be provided.

WHEREFORE, HDL respectfully requests that the Court grant the relief requested herein and such other and further relief as is just and proper.

Dated: February 3, 2016
      Richmond, Virginia

Respectfully submitted,

*/s/ Jason W. Harbour*
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
Henry P. (Toby) Long, III (VSB No. 75134)
Shannon E. Daily (VSB No. 79334)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:   (804) 788-8218

*Counsel to the Debtors*
*and Debtors in Possession*

**EXHIBIT A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **HEALTH DIAGNOSTIC LABORATORY, INC.,** *et al.*, | **Case No. 15-32919 (KRH)** |
| | **(Jointly Administered)** |
| Debtors.[1] | |
| **HEALTH DIAGNOSTIC LABORATORY, INC.,** | **Adv. Pro. No. 16-03011 (KRH)** |
| Plaintiff, | |
| v. | |
| **TRUE HEALTH DIAGNOSTICS, LLC, and JEFFREY P. "BOOMER" CORNWELL,** | |
| Defendants. | |

## <u>DECLARATION OF RICHARD ARROWSMITH</u>

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Health Diagnostic Laboratory, Inc. (0119), Central Medical Laboratory, LLC (2728) and Integrated Health Leaders, LLC (2434).

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
Jason W. Harbour (VSB No. 68220)
Henry P. (Toby) Long, III (VSB No. 75134)
Shannon E. Daily (VSB No. 79334)

*Counsel to the Debtors*
*and Debtors in Possession*

I, Richard Arrowsmith, hereby declare, pursuant to 28 U.S.C. § 1746, that the following is true to the best of my knowledge, information and belief:

1.      I am a Managing Director of A&M's Healthcare Industry Group, and I was appointed as Chief Restructuring Officer to HDL pursuant to the *Order Modifying the Retention of Alvarez & Marsal Healthcare Industry Group, LLC, Solely to Replace Martin McGahan as Chief Restructuring Officer for the Debtors with Richard Arrowsmith, Effective as of September 21, 2015* [Doc. No. 627] entered on October 29, 2015.

2.      I executed the Verification attached to the Verified Complaint (the "Complaint") that initiated this adversary proceeding.

3.      I submit this Declaration in support of the *Reply of Plaintiff in Support of Motion for Entry of an Order Expediting Consideration of, and Shortening the Notice Period Applicable to, Motion for a Temporary Restraining Order, Preliminary Injunction, and Order to Show Cause for Willful Violations of the Automatic Stay, and Memorandum in Support* (the "Reply"), the Motion to Expedite (as defined in the Reply), the TRO Motion (as defined in the Motion to Expedite), and the Complaint.[2]

4.      A true and correct copy of the response letter to the Cease and Desist Letters from HDL (the "HDL Letter"), dated January 6, 2016, is attached hereto as Exhibit 1.

5.      In the HDL Letter, HDL demanded that True Health withdraw the Cease and Desist Letters and confirm that True Health would comply with its obligations under the APA. True Health has neither withdrawn the Cease and Desist Letters nor confirmed that True Health would comply with its obligations under the APA.

---

[2]      Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Reply, the Motion to Expedite or the TRO Motion .

6.       HDL also indicated in the HDL Letter that, although the ARM Agreement requires ARM to comply with all applicable laws, HDL would demand in writing that ARM comply with all applicable laws.  A true and correct copy of the letter HDL sent to ARM on January 6, 2016 (the "HDL/ARM Letter") is attached hereto as Exhibit 2.

7.       On or about January 20th and 21st, I discussed True Health's offer of $1.25 million with more than one member of True Health's management and informed them that the offer was unacceptable because it was much too low.  In fact, I informed True Health's management that the offer was insufficient by a factor of ten.

8.       As indicated in the email from counsel to HDL sent on January 11, 2016, which is part of Exhibit B to the Response (the "January 11th Email"), the Excluded Receivables ARM was collecting as of January 11, 2016, consisted of (i) a batch of Excluded Receivables sent to ARM on or about August 10, 2015, which consists of approximately 5,300 accounts with a total amount owed of approximately $13.7 million; and (ii) a batch of Excluded Receivables sent to ARM after the HDL Sale, which consists of approximately 3,476 accounts with a total amount owed of approximately $11.8 million.

9.       Upon information and belief, the first batch of Excluded Receivables may contain many Excluded Receivables for which insurers made payments directly to patients rather than reimbursing HDL for such claims.

10.      The second batch consists of accounts related to patients identified as insured by and/or as provided claims services by Blue Cross and Blue Shield entities ("BCBS Entities"). HDL and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") have filed

3

the BCBS 2004 Motions[3] in the bankruptcy proceeding seeking Fed. R. Bankr. P. 2004 examinations of certain BCBS Entities because the Debtors believe that such BCBS Entities may have made payments directly to patients rather than reimbursing HDL for such claims.  Upon information and belief, the second batch of Excluded Receivables contains many Excluded Receivables for which BCBS Entities made payments directly to patients rather than reimbursing HDL for such claims.

11.     The third batch of Excluded Receivables mentioned in the January 11th Email was sent to ARM after the HDL Sale, and consists of approximately 430 accounts with a total amount owed of approximately $1.4 million.   As mentioned in the January 11th Email, HDL had instructed ARM to cease collection activities concerning the third batch as of January 11, 2016. As of February 1, 2016, HDL has instructed ARM to commence collection activities concerning the third batch.

12.     As indicated in the January 11th Email, HDL has asked ARM to place collection of accounts on hold for 30 days if an obligor informed ARM that the obligor did not receive payment concerning such Excluded Receivable.  Upon information and belief, this 30 day hold period policy remains in effect.  Upon information and belief, this 30 day hold period policy has been in effect while ARM has attempted to collect the Excluded Receivables.

13.     As further indicated in the January 11th Email, as of January 11, 2016, HDL had asked ARM to take no further action concerning an Excluded Receivable if the obligor proved to

---

[3]     The BCBS 2004 Motions are (i) the *Motion of the Debtors and Debtors in Possession for Entry of an Order Authorizing the Debtors to Conduct Rule 2004 Examinations of Certain Blue Cross and Blue Shield Entities* [Doc. No. 753]; and (ii) *Supplemental Motion of the Debtors and Debtors in Possession for Entry of an Order Authorizing the Debtors to Conduct Rule 2004 Examinations of Certain Blue Cross and Blue Shield Entities* [Doc. No. 756].

ARM that the obligor was not paid by an insurer.  HDL may ask ARM in the near future to commence collection activities with respect to such Excluded Receivables.

14.     My understanding at the time based on representations from True Health was that True Health did not oppose HDL collecting Excluded Receivables from patients who had been paid directly by their insurer.

15.     Unbeknownst to HDL, however, the Defendants contemporaneously were sending the TH Doctor Memos, including the January 6 Doctor Memo, and similar correspondence expressly directing obligors not to provide explanations of benefits ("EOBs") or other information to ARM.

16.     I received one of the TH Doctor Memos, the January 6 Doctor Memo, during the evening of January 26, 2016.

17.     Based on the TH Doctor Memos, the January 6 Doctor Memo, and other information HDL received, HDL realized that True Health had been negotiating in bad faith and was attempting to prevent HDL from collecting any Excluded Receivables connected to physicians, physician groups, or related entities that conduct business with True Health.

18.     In light of these facts, and in the sound exercise of its business judgment, after consulting with counsel to the Committee, HDL determined that it would not be able to resolve these issues without involving the Court, and that initiating the adversary proceeding and seeking the relief requested in the Complaint and the TRO Motion at the earliest possible date was in the best interests of its estate and creditors.

19.     In addition to the Excluded Receivables in the three batches ARM currently is attempting to collect, the face amount owed for the other Excluded Receivables is well in excess of those amounts.  The face amount owed for the Excluded Receivables is well in excess of $50

million.

20.     Upon information and belief, including without limitation information and belief related to my experiences during HDL's bankruptcy case negotiating and working with True Health both before and after the HDL Sale, the Defendants lack the funds necessary to compensate HDL for the damages the Defendants are causing to HDL through their concerted efforts to prevent the collection of Excluded Receivables connected to physicians, physician groups, or related entities that conduct business with True Health.

21.     The effects of the Defendants' wrongful actions, and upon information and belief, Defendants' wrongful actions themselves, are ongoing.

22.     Attached hereto as Exhibit 3 is a true and correct copy of the portion of an email exchange I received on February 1, 2016, after the Complaint was filed initiating this adversary proceeding (the "Living Well Email").   In the Living Well Email, a patient forwards an email from a physician group that, based upon information and belief, has been in communication with one or more of the Defendants.

23.     Attached to the Declaration as Exhibit 4 is a true and correct copy of a letter I received on February 2, 2016 (the "Tomball Letter").   Based upon information and belief and the language of the Tomball Letter, the Tomball Letter is a letter from a physician group that has been in communication with one or more of the Defendants.  The Tomball Letter, among other things, instructs patients not to provide any information in response to attempts to collect Excluded Receivables.

24.     Attached to the Declaration as Exhibit 5 is a true and correct copy of a letter I received on February 2, 2016 (the "First Patient Letter").  Based upon information and belief, the

6

First Patient Letter is from a patient who has been, or whose physician or physician group has been, in communication with one more of the Defendants.

25.     Attached to the Declaration as <u>Exhibit 6</u> is a true and correct copy of a letter I received on February 2, 2016 (the "<u>Ross & Matthews Letter</u>").  Based upon information and belief and the language of the Ross & Matthews Letter, the Ross & Matthews Letter is on behalf of a patient who has been, or whose physician or physician group has been, in communication with one or more of the Defendants.

26.     Attached to the Declaration as <u>Exhibit 7</u> is a true and correct copy of a letter I received on February 2, 2016 (the "<u>Second Patient Letter</u>").  Based upon information and belief and the language of the Second Patient Letter, the Second Patient Letter is from a patient who has been, or whose physician or physician group has been, in communication with one or more of the Defendants.

27.     Prior to the Closing Date, True Health not only was aware of the existence of the Excluded Receivables, but as a potential purchaser True Health had access to information concerning the Excluded Receivables.

I, the undersigned Chief Restructuring Officer of HDL, declare under penalty of perjury that the foregoing is true and correct.

DATED: February 3, 2016                    <u>*/s/ Richard Arrowsmith*</u>
                                                    Richard Arrowsmith

7

**EXHIBIT 1**



HUNTON & WILLIAMS LLP
RIVERFRONT PLAZA, EAST TOWER
951 EAST BYRD STREET
RICHMOND, VIRGINIA 23219-4074

TEL     804 • 788 • 8200
FAX     804 • 788 • 8218


JASON W. HARBOUR
DIRECT DIAL: 804-788-7233
EMAIL:  jharbour@hunton.com

FILE NO: 79841.000010

January 6, 2016

**VIA ELECTRONIC AND OVERNIGHT MAIL**

Eric E. Walker, Esq.
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, Illinois 60603

Re:   **Breach of Asset Purchase Agreement, Willful Violation of the Automatic Stay,
      and Tortious Interference With Contract by True Health Diagnostics, LLC**

Dear Eric:

We are in receipt of your letters to Health Diagnostic Laboratory, Inc. ("HDL"), and HDL's
contract party, Accelerated Receivables Management, Inc. ("ARM"), dated January 5, 2016
(together, the "Letters", and individually, the "HDL Letter" and the "ARM Letter").  The
Letters constitute blatant breaches of the Asset Purchase Agreement, willful violations of the
automatic stay, and intentional tortious interference with a contract.  Unless retracted by
January 8, 2016, HDL intends to seek immediate relief in the Bankruptcy Court.

The Letters each constitute breaches of the Asset Purchase Agreement, dated as of September
3, 3015 (the "APA"), between True Health Diagnostics, LLC ("True Health"), on the one hand,
and HDL and Integrated Health Leaders, LLC, on the other.  Specifically, in the Letters True
Health seeks to exercise control over Excluded Assets consisting of Accounts Receivable (as
defined in the APA) arising from services performed more than one hundred eighty (180) days
prior to the Closing (as defined in the APA).  HDL and True Health had specific discussions
prior to the closing of the APA on the intention of HDL to pursue collection of these Excluded
Assets, and True Health was offered the opportunity to buy these accounts and declined.  Yet,
True Health closed without acquiring any rights in these Excluded Assets.

True Health also breaches the APA by indicating that True Health will not provide information
to HDL concerning these Excluded Assets, yet True Health is required to provide information
to HDL concerning these Excluded Assets for a period of seven years after the Closing as
required by Section 10.3 of the APA.  *See* APA §10.3.  True Health's suggestion in the Letters



HUNTON&
WILLIAMS

Eric E. Walker, Esq.
January 6, 2016
Page 2

that HDL has no rights to books and records relating to the Excluded Assets is wholly without merit. There was no confusion over these points concerning the Excluded Assets since there were specific discussions about them. If these breaches are not immediately cured, HDL will suffer damages and will hold True Health accountable for these breaches.

The Letters each also constitute willful violations of the automatic stay by True Health. HDL's contract with ARM and these Excluded Assets are property of HDL's bankruptcy estate, and True Health is fully aware of that fact. As a result, the Letters are an overt act to obtain possession of property of or from the estate or to exercise control over property of the estate, in willful violation of Bankruptcy Code section 362. In the Fourth Circuit, even corporate debtors are entitled to relief under section 362(k) in these circumstances.

In addition, the ARM Letter constitutes a tortious interference of HDL's contract with ARM. HDL and ARM are parties to a valid contract. True Health is aware of this contractual relationship and has intentionally interfered with this contractual relationship for the specific purpose of impeding HDL's efforts to collect its accounts. If such actions by True Health cause damage to HDL, HDL intends to hold True Health accountable.

By no later than January 8, 2016, HDL demands that True Health withdraw the Letters and confirm that True Health will comply with all terms of the APA, including without limitation Section 10.3. If HDL does not receive such withdrawal and confirmation by January 8, 2016, HDL intends to pursue all available remedies against True Health, including without limitation specific performance, actual damages, punitive damages under Bankruptcy Code section 362(k), and reimbursement of all attorney's fees and expenses incurred in connection with this matter under Bankruptcy Code section 362(k) and Section 11.1 of the APA.

In addition to constituting breaches of the APA, willful violations of the automatic stay, and tortious interference with HDL's contract with ARM, the Letters contain incorrect and inappropriate assertions. As one such example, True Health suggests that HDL could not contract with ARM without bankruptcy court approval. To the contrary, HDL has, in fact, contracted with ARM, and True Health is not a party to or a beneficiary of that contract. Whether or not ARM must be retained as a "professional" under the Bankruptcy Code to be compensated does not affect whether HDL has a contractual relationship with ARM. Moreover, nor does True Health hold a claim in HDL's bankruptcy or have any standing to challenge whether retention under section 327 is required to compensate ARM. In short, True Health's views about this issue are irrelevant. Nonetheless, True Health misstates applicable law.

Specifically, the HDL Letter misrepresents the holding in the *Metropolitan Hospital* case and the law concerning whether ARM is a professional person under Bankruptcy Code section 327.

# Hunton&
# Williams

Eric E. Walker, Esq.
January 6, 2016
Page 3

The court in *Metropolitan Hospital* did not hold, as True Health states in the HDL Letter, that the "collection agency was a professional under Section 327(a) because of the specialized skill involved in collecting medical accounts receivables from patients with insurance." HDL Letter, at 1. Instead, the *Metropolitan Hospital* court stated that with respect to the debt collector at issue, HHL, "the services of HHL go far beyond mere debt collection." *Metropolitan Hospital*, 119 B.R. 910, 917 (Bankr. E.D. Pa. 1990). In *Metropolitan Hospital*, the debt collector actually submitted medicaid applications for patients and was "responsible for insuring that the Commonwealth paid whatever was required under the medicaid regulations." *Id.* Thus, the *Metropolitan Hospital* court held that "because of the highly specialized and technical nature of HHL's services, it is more like a paralegal professional than a debt collector, and is a professional within the meaning of *§ 327(a).*" Here, ARM is simply a debt collector. As a result, the *Metropolitan Hospital* case supports the conclusion the ARM is not a professional person. This conclusion is consistent with the *Windsor Communications* case, in which the court held that the record in that case did not "support the conclusion that this collection agency is a professional person." *Windsor Communications Group, Inc.*, 68 B.R. 1007, 1012 (Bankr. E.D. Pa. 1986).

The HDL Letter also fails to address whether ARM's duties are sufficiently central to the administration of HDL's estate to qualify ARM as a "professional person," as that term of art is used in Bankruptcy Code section 327. *See Sieling Associates Limited Partnership*, 128 B.R. 721, 723 (Bankr. E.D. Va. 1991) (noting the distinction between administrative and mechanical functions and that if "the duties involved are central to the administration of the estate such duties are professional in nature."). ARM's duties do not include assisting with the negotiation of a plan, assisting in the adjustment of debtor/creditor relationships, disposing of assets, or purchasing assets. Therefore, ARM's duties are not central to the administration of HDL's estate. *See id.* As a result, ARM is not a "professional person" under Bankruptcy Code section 327. *See id.*

The Letters also misrepresent HDL's rights to collect accounts receivables from patients. Tellingly, the alleged "billing policy" enclosed with the Letters does not indicate to whom or when the alleged billing policy was sent. Setting aside the enforceability of the alleged billing policy, which HDL disputes, True Health is not a recipient of the alleged billing policy and has no rights whatsoever concerning the alleged billing policy. Instead, it appears that the alleged billing policy was included as part of True Health's inappropriate effort to prevent HDL from collecting Excluded Assets that True Health knowingly chose not to purchase under the APA.

Finally, the Letters allege that ARM is engaged in misrepresentations and is not legally authorized to conduct business in certain jurisdictions. As you would expect, the contract between HDL and ARM requires ARM to comply with the federal Fair Debt Collection Act and the laws of the applicable jurisdictions. Although it is HDL's understanding that ARM is



Eric E. Walker, Esq.
January 6, 2016
Page 4

complying with all applicable laws, in light of the allegations True Health has raised, HDL has demanded in writing that ARM confirm that ARM is complying with all applicable laws in accordance with its contractual obligations.   True Health, however, has no right to make demands on ARM or interfere with ARM's performance of its contractual obligations to HDL.

Please contact me immediately should you have any questions.

Sincerely,

Jason W. Harbour

Cc:   H. Slayten Dabney, Jr., Esq., Dabney PLLC (via email)
Robert Van Arsdale, Esq., Office of the United States Trustee (via email)
Richard Kanowitz, Esq., Cooley LLC (via email)

**EXHIBIT 2**



HUNTON & WILLIAMS LLP
RIVERFRONT PLAZA, EAST TOWER
951 EAST BYRD STREET
RICHMOND, VIRGINIA 23219-4074

TEL      804 • 788 • 8200
FAX      804 • 788 • 8218

JASON W. HARBOUR
DIRECT DIAL: 804-788-7233
EMAIL:  jharbour@hunton.com

January 6, 2016                                                FILE NO: 79841.000010

**VIA ELECTRONIC AND OVERNIGHT MAIL**

Fran Landau
Accelerated Receivables Management, Inc.
3740 Beach Boulevard, Suite 307-A
Jacksonville, Florida 32207
fran@curringedgecollections.com

Re:     **January 5, 2016, Letter from True Health Diagnostics, LLC**

Dear Fran:

We represent Health Diagnostic Laboratory, Inc. ("HDL"), in connection with HDL's bankruptcy case pending the Bankruptcy Court for the Eastern District of Virginia.

You received a letter from True Health Diagnostics, LLC ("True Health"), dated January 5, 2016, which alleged, among other things, that Accelerated Receivables Management, Inc. ("ARM"), is making misrepresentations regarding True Health and its relationship to HDL, and that ARM does not appear to be legally authorized to collect debts in many jurisdictions.

As you know, ARM's Agreement for Services with HDL requires that ARM comply with the federal Fair Debt Collection Act and the laws of the applicable jurisdictions. Please confirm that ARM is complying with all applicable laws in accordance with its contractual obligations.

Please contact me immediately should you have any questions.

Sincerely,

Jason W. Harbour

ATLANTA  AUSTIN  BANGKOK  BEIJING  BRUSSELS  CHARLOTTE  DALLAS  HOUSTON  LONDON  LOS ANGELES
McLEAN  MIAMI  NEW YORK  NORFOLK  RALEIGH  RICHMOND  SAN FRANCISCO  TOKYO  WASHINGTON
www.hunton.com

**EXHIBIT 3**

Fwd: HDL Billing - "cease and desist" letter - Rob

From: Rob Vanderschans
Sent: Thu, Jan 21, 2016 at 11:42 am
To: info@cuttingedgecollections.com

---

Images not displayed: Show images or Always show images from this sender

Please read below

The following information below will take care of account 16148597

Rob Van Der Schans
Director of Tennis
USPTA - Elite & USPTR - Professional
Stonebriar Country Club
www.stonebriar.com
rob.vanderschans@clubcorp.com
Tennis Pro Shop: (972) 625-9276

---

From: "Candy Hill" <candy@livingwelldallas.com>
To: "Rob Vanderschans" <Rob.Vanderschans@ourclub.com>
Sent: Thursday, January 21, 2016 10:03:06 AM
Subject: HDL Billing - "cease and desist" letter

Dear Patient,

It has been brought to our attention that several of our patients have received collection notices from Accelerated Receivables Management Inc. regarding Health Diagnostic Laboratory invoices. Health Diagnostic Labs ("HDL") was purchased in 2015 by True Health Diagnostics (assets only), however the accounts receivable/payable divisions are still owned and operated by the shareholders of HDL. The previous shareholders have hired a collections agency to try and recoup money they did not receive in this merger/acquisition, thereby violating their own billing policy in the process.

We realize how concerning this may be for some of you and want to share with you a letter regarding the billing policy HDL had in place at the time of service for each lab drawn at our office:

We at HDL, Inc. are dedicated to both the physician and patient partnership in order to prevent events. Our goal is to provide quality testing that will help you identify where on the disease continuum that a patient sits and to provide the tools you need to get that patient back to a healthy state. A key component to achieving our goals is patient accessibility. Therefore, we internally control costs, at no sacrifice to quality, and have adopted the billing policy where we do not balance bill the patient for costs not covered by their insurance companies. The out of pocket expense to the patient with insurance is zero.

**EXHIBIT 4**

*Tomball Women's Health Care Center, P.A.*
### Obstetrics, Gynecology & Infertility

*Michael A. Rodriguez, M.D.*
*Marie T. Sohner, M.D., F.A.C.O.G.*

929 Graham Drive, Suite B • Tomball, Texas 77375
Phone: 281-351-5548 • Fax: 281-351-5020

January 7, 2016

We at Tomball Women's Healthcare and New Life Wellness have been made aware that some patients have received threatening letters from Accelerated Receivables Management claiming that monies are owed from labs processed by HDL (Health Diagnostics Lab) which is now out of business. This is simply an attempt by a bankrupt company to regain some monies in which to pay their debtors.

It is my understanding that True Health Diagnostics, the company who purchased HDL's assets (but not the company (HDL)) had their legal team serve the collection agency a cease and desist order. True Health is working tirelessly to rectify this situation and has been more than supportive to us and our patients.

**However, you need to be aware of the following:**

1) If you receive a letter from this company or any other company attempting to collect from you for Health Diagnostics Laboratory, you need to notify us immediately.

2) Do not communicate with the company via phone. They are very aggressive.

3) Do not provide them with any information in writing or verbally. Period.

4) Continue to watch for emails from us as we will keep you posted.

5) If you have had lab drawn with True Health, this does not apply to them. Only to HDL. Starting January 1st, you may receive a bill from True Health for lab services as you would from any other lab, dependent on your insurance benefits. Unfortunately, this year we are seeing insurance pay less and less. If you receive a bill, notify us. Do not pay anything until you speak with us.

6) If you receive a letter, it is imperative that you reply to them within 30 days or it will be assumed that you accept the debt. We have formulated a sample letter that you can use. This sample letter will be sent out today to the patients who received debt collection letters. If you receive a letter from the debt collection agency, please contact us and we will get the letter to you.

7) You are not impeding any government investigation by refusing to send in the Explanation of Benefits to this company. This collection agency is simply applying harassment techniques to achieve their fraudulent goals.

Sincerely,

Dr. Michael Rodriguez
Tomball Women's Healthcare
New Life Wellness & Medical Spa

**EXHIBIT 5**

Accelerated Receivables Management
3740 Beach Boulevard, Suite 307-A
Jacksonville, FL 32207
904-562-5245


This notice is in response to a collection letter I received stating I owe money to Health Diagnostic Laboratory, Inc. for lab services rendered.  I am disputing the validity of this claim, as my insurance policy was applied and thus, paid in accordance with the agreement my insurance company had with Health Diagnostic Laboratory.  Furthermore, this notice is in direct conflict with the stated Health Diagnostic Laboratory Billing Policy attached to this notice.

If you still feel I owe the amount stated in the collection letter, please provide the following to me:

- A detailed invoice displaying each charge being alleged
- A copy of the License and/or Bond issued to Accelerated Receivables Management by the Attorney General's Office of the state of Texas indicating you have legal authority to collect debt in Texas.


Thank You,


Signed                                                    Date

_____                    _____

**EXHIBIT 6**

LAW OFFICES
### ROSS & MATTHEWS, P.C.
3650 Lovell Avenue
Fort Worth, Texas 76107

Phone (817) 255-2044
**Please reference our File Number 2240452 when replying**

Fax (817) 255-2090
**Daryl G. Reid, Of Counsel**

January 29, 2016

Accelerated Receivables Management, Inc.
3740 Beach Boulevard, Ste. 307-A
Jacksonville, FL 32207

> *Re:*    ***Chad Brown***
> ***150 PR 4232***
> ***Decatur, TX 76234***

To Whom It May Concern:

We are writing to you on behalf of Chad Brown regarding collection of an alleged debt. You have already been told by the Law Firm for the Laboratory to Cease & Desist any further attempts to collect on these accounts (see enclosed).

You are hereby given formal demand to cease and desist from any further attempts to collect on any alleged debt. If you continue such action, we will have no alternative but to recommend to Mr. Brown that he contact the PerkinsCoie Firm and the Texas Attorney General's office.

Sincerely,

Daryl G. Reid,
Of Counsel

DGR/mm
cc: Chad Brown
Intake No.: 2240452
Enc.

**EXHIBIT 7**

FROM:

January 26, 2016

Kristin Gottschalk

8804 Silverarrow Court

Austin, TX, 78759

*I 6147236*
*1432917*

TO: Accelerated Receivables Management, Inc.

3740 Beach Boulevard, Suite 307- A

Jacksonville, FL 32207

**Regarding Account Number: 1432917**

I'm writing in regard to your communication on 12-22-2015 in which you asserted that I owe $4,210.97 to Health Diagnostic Laboratory, Inc.

This letter is to inform you that I am disputing the validity of this debt or charge, as is my right under Section 809 of the Fair Debt Collections Practices Act. Furthermore, all collection efforts must cease until you verify the debt being valid as delineated under Section 809(b) of the aforementioned act.

Please provide me with the following:

- The name and address of the creditor.
- Proof of my responsibility to this debt in the form of a bill or accounting from Health Diagnostics Laboratory Inc. showing the exact amount of the debt incurred and all payments made on the account.

My provider and Health Diagnostics Laboratory (now True Health Diagnostics, LLC) have informed me that the charge in question is not legitimate and is unauthorized.  Note that I never received any bill from Health Diagnostics Laboratory or True Health Diagnostics or received any check for the services in question from my health insurance provider Blue Cross Blue Shield.  This letter coincides with the attached 'Cease and Desist' letter addressed to Fran Landau on January 5, 2016 from Perkins Coie LLP.

Please do not contact any credit reporting agencies until this debt is verified. If they have already been contacted regarding the matter, please notify them that I am disputing this debt.  In the event you cannot verify this debt, you should notify the credit reporting agencies of your findings.

Further communications should be in writing and limited to a notification of either; your failure to verify the debt and the closing of this matter, or consist of records I have asked you to provide.

Signature – Kristin M. Gottschalk

Date – January 26, 2016